IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA,   :
                            :
v.                          :       CRIMINAL INDICTMENT NO.:
                            :       2:23-CR-00005-SCJ-JCF
ROBERT WILLIAM WATKINS      :

## ORDER and REPORT AND RECOMMENDATION

This case is before the Court on Defendant's Motions To Dismiss (Docs. 24, 25) and Motion To Suppress (Doc. 27). For the reasons discussed below, it is **RECOMMENDED** that Defendant's motions be **DENIED**.

## Factual And Procedural Background

On November 16, 2021, A.W., Defendant's daughter, reported that Defendant punched her in the face, and Defendant was arrested and charged with cruelty to children in the first degree and battery. (Doc. 24 at 1). Defendant was released on the condition that he not have contact with A.W. or return to his house. (*Id*.). On December 1, 2021 A.W. reported that Defendant had been molesting her for the past five years. (*Id*. at 1-2). Law enforcement obtained a search warrant for Defendant's house and later obtained arrest warrants for state charges. (*Id*. at 2). An Indictment filed in this Court on March 7, 2023 charges Defendant with three counts of production of child pornography in violation of 18 U.S.C. §§ 2251(a) and 2251(e). (Doc. 1). Defendant moved to dismiss those counts "as they fail to allege a factual assertion sufficient to support the government's contention that [Defendant]

1

committed the crimes charged." (Doc. 24). Defendant also moved to dismiss those counts "as the intrastate production of child pornography has no impact on interstate and foreign commerce." (Doc. 25). The Government responded to those motions (Doc. 28), and Defendant replied (Doc. 32). Defendant also moved to suppress evidence law enforcement officers seized from Defendant's residence pursuant to a search warrant on December 1, 2021. (Doc. 27). The Government responded to that motion (Doc. 29), and Defendant replied (31).

With briefing complete, the undersigned now considers the merits of Defendant's motions.[1]

## Discussion

### I.   Motions To Dismiss (Docs. 24, 25)

#### A.   Sufficiency Of Indictment (Doc. 24)

Defendant argues that the three counts in the Indictment "fail to allege a factual assertion sufficient to support the government's contention that [he] committed the crimes charged." (Doc. 24 at 1).

Federal Rule of Criminal Procedure 7(c) provides in relevant part:

The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government. It need not contain a formal introduction or conclusion. A count may incorporate by reference an allegation made in another count. A count may allege that the means by which the defendant committed the offense are unknown

---

[1] Defendant's motion to suppress statements (Doc. 26) has been deferred to the District Judge. (*See* Oct. 11, 2023 minute entry Order).

2

or that the defendant committed it by one or more specified means. For each count, the indictment . . . must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated.

FED. R. CRIM. P. 7(c). "To be sufficient, an indictment must (1) present the essential elements of the charged offense; (2) notify the defendant of the charges to be defended against; and (3) enable the accused to rely on a judgment under the indictment as a bar against future prosecutions for the same offense." *United States v. Hameen*, Nos. 19-14279 & 22-12968, 2023 U.S. App. LEXIS 24684, at \*17 (11th Cir. Sept. 18, 2023) (citing *United States v. Wayerski*, 624 F.3d 1342, 1349 (11th Cir. 2010)). "This is sufficient to 'satisfy the Sixth Amendment's guarantee of notice to the accused of the nature and cause of the accusation, and the Fifth Amendment's assurance that a grand jury will return an indictment only when if finds probable cause for all elements of the crime.' " *Id*. (quoting *Wayerski*, 624 F.3d at 1349). "Additionally, the indictment's specific reference to the statute upon which the charge is based adequately informs the defendant of the charge." *Id*. (citing *Wayerski*, 624 F.3d at 1349-50). "An indictment also fulfills the constitutional standard when it tracks the statute's wording, as long as the language sets forth the essential elements of the crime." *Id*. (citing *Wayerski*, 624 F.3d at 1350). "In 'analyzing challenges to the sufficiency of an indictment, courts give the indictment a common sense construction, and its validity is to be determined by practical, not

technical considerations.' " *Wayerski*, 624 F.3d at 1349 (quoting *United States v. Poirier*, 321 F.3d 1024, 1029 (11th Cir. 2003)).

Count One of the Indictment charges:

> On or about January 1, 2020, in the Northern District of Georgia, the defendant, ROBERT WILLIAM WATKINS, did knowingly employ, use, persuade, induce, entice, and coerce minor victim #1 to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, knowing and having reason to know that said visual depiction was produced and transmitted using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce, in violation of Title 18, United States Code, Sections 2251(a) and 2251(e).

(Doc. 1). Count Two is identical to Count One other than charging an offense date of February 3, 2020, and Count Three is identical to the other counts other than charging an offense date of September 6, 2021. (*Id*.). The statute Defendant is charged with violating, 18 U.S.C. §§ 2251(a), provides:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor to assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mail, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility or foreign commerce or in or affecting interstate or foreign commerce or mailed.

4

18 U.S.C. § 2251(a).

Defendant "concede[s] that the indictment alleges the elements of the offense," but he argues that "the indictment fails to allege the facts sufficient to apprise him of the charges he faces" because it does not provide the "sexually explicit conduct" it alleges Defendant " 'employ[ed], use[d], persuade[d], entice[d], and coerce[d]' the victim to engage in," "fails to allege the 'visual depiction' produced and transmitted," and "fails to identify the 'materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce.' " (Doc. 24 at 3-4). The Government contends that the Indictment is sufficient because it charges Defendant with violations of 18 U.S.C. § 2251(a), presents the essential elements of the charged offense, and provides the dates on which the alleged offenses occurred and therefore "enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense[.]" (Doc. 28 at 3-4). The undersigned agrees with the Government and finds that the Indictment is sufficient as it "(1) present[s] the essential elements of the charged offense; (2) notif[ies] the defendant of the charges to be defended against; and (3) enable[s] the accused to rely on a judgment under the indictment as a bar against future prosecutions for the same offense." *Hameen*, 2023 U.S. App. LEXIS 24684, at *17.

The fact that the Indictment does not contain the information Defendant asserts is lacking—i.e., the "sexually explicit conduct" it alleges Defendant " 'employ[ed], use[d], persuade[d], entice[d], and coerce[d]' the victim to engage in," "the 'visual depiction' produced and transmitted," and "the 'materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce' " (Doc. 24 at 3-4)—does not render it insufficient. "Ordinarily, 'an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.' " *United States v. Jenkins*, No. 20-13831, 2022 U.S. App. LEXIS 4278, at *7 (11th Cir. Feb. 16, 2022) (quoting *United States v. Stavroulakis*, 952 F.2d 686, 693 (11th Cir. 1992)). " 'It is not necessary for an indictment . . . to allege in detail the factual proof that will be relied upon to support the charges.' " *Id*. at *7 (quoting *United States v. Sharpe*, 438 F.3d 1257, 1263 n.3 (11th Cir. 2006)). "Rather, more detailed information, 'if essential to the defense, can be obtained by a motion for a bill or particulars' or through pretrial discovery." *Id*. at *7-8 (quoting *Sharpe*, 438 at 1263 n.3 and citing *Stavroulakis*, 952 F.2d at 693). Defendant has not cited authority for the proposition that the Indictment was required to provide more specific detail about the "sexually explicit conduct" and "visual depictions" at issue. With respect to the alleged failure to identify "the 'materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce,' " the Indictment charges that that visual depictions at issue were "produced and transmitted using materials that had been mailed, shipped, and

transported in and affecting interstate and foreign commerce," which sufficiently tracks the language or 18 U.S.C. § 2251(a). Nor has Defendant shown that he has been unable to obtain the omitted information through discovery. The Government asserts that it has made the videos and images in question available for counsel's review and has provided reports of investigation in discovery which list the file names and describe the child pornography at issue and specify the electronic devices in question (Doc. 28 at 5-6 n.2 & 3), and Defendant has not shown otherwise.

The undersigned finds that the Indictment is legally sufficient because it referred to and tracked the language on which it was based," i.e., 18 U.S.C. § 2251(a), "and provided notice to the defendant[] of the charges to be defended," and it alleged the time and place of the offenses. *Wayerski*, 624 F.3d at 1349-50 (finding that indictment that stated the dates of the offenses in the Northern District of Florida and tracked the language of the child exploitation statute, 18 U.S.C. 2252A(g), was sufficient as it was "adequate to apprise the defendants of the charges and to plead double jeopardy in any further prosecution for the same offense"); *see also Jenkins*, 2022 U.S. App. LEXIS 4278, at *8-9 (finding that the child pornography indictment "though spare, was legally sufficient" even though "indictment did not describe Jenkins's conduct in detail or identify the particular images at issue" because the indictment "alleged the essential elements of either a child pornography production or distribution offense, the date or date range when the offense allegedly occurred, and the initials of the minor victim involved," and the government identified "the

7

particular images at issue and the means of production" in response to a bill of particulars). The undersigned therefore **RECOMMENDS** that Defendant's motion to dismiss for insufficient indictment (Doc. 24) be **DENIED**.

### B.    <u>Interstate Commerce</u>

Defendant argues that the Court should dismiss Counts One through Three of the Indictment "as the intrastate production of child pornography has no impact on interstate and foreign commerce." (Doc. 25 at 1). Defendant acknowledges that "[t]he Eleventh Circuit has upheld the constitutionality of 18 U.S.C. § 2251(a) and other child pornography provisions based on their express jurisdictional elements requiring that interstate materials have been used in the production of the pornography" and "that this Court is bound by such precedent[.]" (*Id*. at 3-4 (citing *United States v. Maxwell*, 446 F.3d 1210 (11th Cir. 2006); *United States v. Matthews*, 184 F. App'x 868 (11th Cir. 2006); *United States v. Parton*, 749 F.3d 1329 (11th Cir. 2014))). (Doc. 25 at 3). Defendant nevertheless "advances this argument for the purpose of preserving the matter for higher court review." (*Id*. at 4).

In *United States v. Smith*, 459 F.3d 1276 (11th Cir. 2006), the defendant argued that 18 U.S.C. § 2251(a), the same statute Defendant is charged with violating in this case, was an unconstitutional exercise of Congress's Commerce Clause authority as applied to his conduct, but the Eleventh Circuit rejected that argument and "easily conclude[d] that the application of § 2251(a) to Smith's

intrastate production of child pornography is within Congress's constitutional authority" based on its prior binding decision in *United States v. Maxwell*, 446 F.3d 1210 (11th Cir. 2006). *Smith*, 459 F.3d at 1282, 1284-85. In *Parton*, the defendant, who was charged with violating 18 U.S.C. § 2251(a), asked the Eleventh Circuit "to overrule [its] prior, binding precedent" in *Smith*, and the court "decline[d] to do so." 749 F.3d at 1329. Like Defendant in this case, the defendant in *Parton* argued in his motion to dismiss the indictment that "the sole interstate commerce nexus asserted by the government is that the electronic device that Parton used to make the videos or photos traveled in interstate commerce," which "interstate commerce nexus is too tenuous to support a federal prosecution." *Id*. at 1330. The district court denied his motion to dismiss, and the Eleventh Circuit affirmed that denial based on its decision in *Smith*, which "squarely rejected the precise argument he now presents on appeal." *Id*. at 1330-32. Neither the Supreme Court nor the Eleventh Circuit has overruled that precedent, and it thus remains binding on this Court. As recently as August 2023, the Eleventh Circuit rejected a defendant's argument that his use of a cellphone that was manufactured outside the state of Florida and thus had traveled in interstate commerce was an insufficient nexus to interstate commerce to uphold his §2251(a) conviction: "Defendant's argument that his conviction under § 2251(a) violates the Commerce Clause is foreclosed by this Court's decision in *Smith*[.]" *United States v. Pastran*, No. 21-13829, 2023 U.S. App. LEXIS 23057, at *14-16 (11th Cir. Aug. 31, 2023) (unpublished). As this Court is bound by the Eleventh Circuit's published

decisions in *Maxwell*, *Smith*, and *Parton*, the undersigned **RECOMMENDS** that Defendant's motion to dismiss the Indictment (Doc. 25) be **DENIED**.

## II.   <u>Motion To Suppress (Doc. 27)</u>

Defendant moves to suppress evidence seized from his house by law enforcement officers pursuant to a search warrant. (Doc. 27). Defendant argues that the search warrant was not supported by probable cause and that the search was conducted in an unreasonable manner. (*Id*. at 1). On December 1, 2021, a Barrow County Magistrate Judge signed a search warrant authorizing the search of Defendant's residence in Winder, Georgia based on the affidavit of Barrow County Sheriff's Office Investigator Mackenzie McCorkle. (Doc. 27-1). The search warrant authorized the search of the residence and surrounding property, including outbuildings and vehicles, for evidence of child molestation in violation of O.C.G.A. § 16-6-4, including electronic devices such as computers, cellular phones, video game systems "or another device that can be used for the purpose of communication, transmission of data such a[s] pictures and video, and allow access to the internet"; [a]ny documentation, records, or evidence which may indicate motive or intent; the contents of a safe; and "Ambien, Plan B pills or similar substances." (*Id*. at 6-7).

### A.   <u>Probable Cause</u>

#### 1.   <u>Applicable Standards</u>

"Where a search is conducted under the authority of a warrant, the defendant challenging the search carries the burden of showing the warrant to be invalid."

*United States v. Kilgore*, 2012 U.S. Dist. LEXIS 154148, at *14 (N.D. Ga. Sept. 13, 2012) (internal quotation omitted), *adopted by* 2012 U.S. Dist. LEXIS 153867 (N.D. Ga. Oct. 26, 2012). "It is not easy for a Defendant to meet this burden, and a judicial preference is accorded searches under a warrant." *United States v. Teague*, No. 2:10-CR-006-RWS-SSC, 2010 U.S. Dist. LEXIS 142717, at *86 (N.D. Ga. Nov. 22, 2010) (internal quotation omitted), *adopted by* 2011 U.S. Dist. LEXIS 42260 (N.D. Ga. Nov. 22, 2010). "The Fourth Amendment allows warrants to issue on probable cause, a standard well short of absolute certainty." *L.A. County v. Rettele*, 550 U.S. 609, 615 (2007). The task of a magistrate judge, when issuing a warrant, " 'is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *United States v. Miller*, 24 F.3d 1357, 1361 (11th Cir. 1994) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The *Miller* court explained the role of a court reviewing a search warrant:

> Courts reviewing the legitimacy of search warrants should not interpret supporting affidavits in a hypertechnical manner; rather, a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to magistrate[ judges] in their probable cause determinations.

*Miller*, 24 F.3d at 1361 (citing *Gates*, 462 U.S. at 236-37).

   2.   **Analysis**

Defendant argues without elaboration that "[t]he search warrant lacked probable cause and a nexus between the object sought and the location searched." (Doc. 27 at 5). In his reply, Defendant asserts that "[t]his Court has the responsibility to review the affidavit and independently determine if the issuing magistrate had probable cause to issue the search warrant," and he posits that "upon such a review, this Court will determine that the issuing magistrate lacked probable cause to issue the search warrant[.]" (Doc. 31 at 2). Defendant did not explain how the search warrant affidavit does not support a finding that probable cause supported the issuance of the search warrant at issue.

The undersigned has considered the search warrant affidavit at issue (Doc. 27-1 at 1-5) and finds that it sets forth probable cause to believe that evidence of a crime would be found in the property to be searched. The affidavit states that Investigator McCorkle received a call on December 1, 2021 from a Division of Family and Children Services (DFACS) worker, who reported that Defendant's daughter, who had been removed from his residence because he hit her, "disclosed that her father had been molesting her for the past five years." (*Id*. at 2). During a video- and audio-recorded forensic interview of Defendant's daughter conducted the same day, the daughter provided detailed descriptions of Defendant's repeated sexual activity toward his daughter, recounted in the search warrant affidavit; she described locations where these events occurred, including Defendant's room, the dining room, and other rooms in the residence; she reported that Defendant would either

12

video tape or take pictures of these activities with his cell phone or another camera; he forced her to take Plan B pills; and he kept the SIM card from the camera in a safe in his room. (Doc. 27-1 at 2-4). The information included in the affidavit is sufficient to establish a fair probability that evidence of child molestation would be found in the residence to be searched.

Moreover, even if the affidavit did not provide probable cause (and it does), the good faith exception to the exclusionary rule applies here. The exclusionary rule, which provides that evidence seized as the result of a search violative of the Fourth Amendment may not be used by the Government in a subsequent criminal prosecution, is " 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect.' " *United States v. Martin*, 297 F.3d 1308, 1312 (11th Cir. 2002) (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)). In *Herring v. United States*, 555 U.S. 135 (2009), the Supreme Court addressed the limited role of the exclusionary rule:

> The fact that a Fourth Amendment violation occurred—*i.e.*, that a search or arrest was unreasonable—does not necessarily mean that the exclusionary rule applies. *Illinois v. Gates*, 462 U.S. 213, 223[] (1983). Indeed, exclusion "has always been our last resort, not our first impulse," *Hudson v. Michigan*, 547 U.S. 586, 591[] (2006), and our precedents establish important principles that constrain application of the exclusionary rule.

*Id.* at 140. The Court explained that "[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice

13

system." *Id.* at 144. The purpose of the exclusionary rule is "to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Id.*

In *Leon*, the Supreme Court modified the exclusionary rule to allow prosecutors to use evidence "obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." 468 U.S. at 900. In *Martin*, the Eleventh Circuit Court of Appeals explained what has become known as the *Leon* good faith exception to the exclusionary rule:

> [*Leon*] stands for the principle that courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause. The *Leon* good faith exception applies in all but four limited sets of circumstances. *Id.* at 923. The four sets of circumstances are as follows: (1) where "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) "where the issuing magistrate wholly abandoned his judicial role in the manner condemned in" *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319[] (1979); (3) where the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where, depending upon the circumstances of the particular case, a warrant is "so facially deficient – i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid." *Id.* (internal quotation marks omitted).

*Martin*, 297 F.3d at 1313 (original formatting altered).

14

Defendant does not argue, nor has he shown that any of those circumstances apply here. There is no evidence or proffer that the issuing judge was misled or wholly abandoned his judicial role, and the warrant particularizes the place to be searched and the things to be seized. Moreover, as discussed above, the allegations in the search warrant affidavit establish sufficient indicia of probable cause to enable a reasonable officer to execute the warrant thinking it valid. See *United States v. McDaniel*, No. 4:08-CR-26-01HLM, 2009 WL 10674310, at *11 (N.D. Ga. May 18, 2009) ("the 'entirely unreasonable' standard is high"); *United States v. Qose*, 679 F. App'x 761, 764 (11th Cir. 2017) (finding *Leon* applied when there was no evidence that "agents acted in bad faith or were objectively unreasonable in relying on the warrant").

It is therefore **RECOMMENDED** that Defendant's motion to suppress evidence based on lack of probable cause be **DENIED**.

### B.   <u>Manner of Execution</u>

Defendant argues that "the search was executed in an unreasonable manner" because "law enforcement allowed a private citizen, a reported neighbor, to provide access to the house," and "law enforcement demanded [Defendant's] presence at the house, and the search continued without him being present." (Doc. 27 at 5). Defendant asserts that when officers went to Defendant's house to execute the search warrant, Defendant's neighbor was outside and provided officers the code to gain access to the house; that once inside the house Investigator McCorkle contacted

15

Defendant and told him that they had a search warrant and that his neighbor gave them the passcode to the house; McCorkle asked for the passcode for the safe in his closet, which Defendant provided; Defendant told McCorkle that the safe also required a key, which Defendant had; police directed Defendant to return to the house; and while they waited for Defendant to arrive, officers continued to search the house. (Doc. 27 at 2).

The Government does not dispute those factual assertions, but it contends that because the Barrow County Sheriff's Office had a valid search warrant for Defendant's residence, the officers "could search his residence with or without his presence." (Doc. 29 at 7). The Government argues that "[t]here is no statute or case law requiring a person to be present while law enforcement executes a search warrant for his/her residence" and points out that "[t]here are many situations where officers execute search warrants without the defendant's presence" such as when a defendant has been arrested. (*Id*.). The Government further contends that it was not unreasonable for officers to obtain the passcode to the house from the neighbor in order to avoid having to damage Defendant's property to enter the house or to request that Defendant provide a key to the safe in order so that they did not have to cut the safe open. (*Id*. at 7-8). The undersigned agrees with the Government.

In the first place, Defendant has provided no authority for the proposition that officers were required to wait for Defendant to return home or be present for them to search his residence. The search warrant authorized the executing officers "to

16

enter, search, and seize within ten (10) days of this date, the person, premises, or property described above," i.e., Defendant's residence," and "[a] copy of this Warrant is to be left with the person searched, *or if no person is available*, on the premises or vehicles searched." (Doc. 27-1 at 7 (emphasis added)). The warrant also authorized the officers to use force if necessary to open the safe. (*Id*.). Thus, the warrant authorized the officers to enter the residence and search it, even in the absence of an occupant, which could have involved the use of force to enter the residence if Defendant's neighbor had not been able to provide the passcode for entry, and the warrant also authorized the officers to use force to open the safe therein if necessary, which they were able to avoid by having Defendant provide the passcode and key. The officers acted lawfully and reasonably in executing the warrant. It is therefore **RECOMMENDED** that Defendant's motion to suppress evidence seized from his residence pursuant to a search warrant based on the manner of its execution be **DENIED**.

### Summary

For the reasons discussed above, it is **RECOMMENDED** that Defendant's Motions To Dismiss (Docs. 24, 25) be **DENIED** and that his Motion To Suppress (Doc. 27) be **DENIED**.

**IT IS FURTHER ORDERED** that, subject to a ruling by the District Judge on any objections to orders or recommendations of the undersigned Magistrate Judge, this case is **CERTIFIED READY FOR TRIAL**.

**IT IS SO REPORTED AND RECOMMENDED** this 11th day of January, 2024.

/s/ J. Clay Fuller
J. Clay Fuller
United States Magistrate Judge